UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| DR. CHARLES P. RICHARDSON, JR. And PARKS FAMILY, LLC, individually and Derivatively on behalf of INTELHEART INTERNATIONAL, INC., and AMI CARDIAC MONITORING, LLC. Plaintiff, v. <br><br> DOROTHY D. GLODEK, an individual, and D. GLODEK LUCKETTS FAMILY, LLC, a Wyoming company, LYNDA COLE, an individual, and DMS-SERVICE, LLC, a Nevada company, <br><br> Defendants, <br><br> and <br><br> INTELHEART INTERNATIONAL, INC. a Delaware corporation, and AMI CARDIAC MONITORING, LLC, a Maryland company, <br><br> Nominal Defendants. | CASE NO.:  3:18-cv-01294-TJC-PDB |

**MOTION TO DISMISS COMPLAINT ON BEHALF OF ALL DEFENDANTS,
INCLUDING NOMINAL DEFENDANTS**

All of the above-named defendants, including the nominal defendants, hereby move this

Honorable Court for an Order dismissing the Complaint pursuant to Rules 8(a), 9(b), 12(b)(2),

12(b)(3), 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure.

**I.    SUMMARY OF THE CASE**

Plaintiffs' Complaint is premised on three basic sets of allegations.  The first is that

defendant Glodek fraudulently induced plaintiff Richardson to enter into a Contribution and

Exchange Agreement ("Agreement") by means of unspecified misrepresentations about the

1

financial health of her company, AMI Cardiac Monitoring, LLC ("AMI"), and subsequently failed to provide Richardson with books and records of AMI (Counts One and Four).  The Agreement provided that Glodek would contribute 100% of AMI to a holding company, IntelHeart International, Inc. ("IntelHeart"), and that Richardson would contribute certain technology developed and owned by him to Intelheart.  Intelheart, in turn, would be owned equally by Glodek through D Glodek Lucketts Family, LLC ("Lucketts Family") and by Richardson through Parks Family, LLC.  (Complaint, ¶¶ 6, 8, 22).  The second alleged wrongful course of conduct is that Glodek and Lucketts Family misappropriated AMI funds for Glodek's personal use.  (Count Three, Complaint, ¶¶ 26-29, 48).  Third, plaintiffs allege that Glodek and Lucketts Family caused AMI to purchase "fraudulent, non-FDA-approved Holter heart patches" from defendant Lynda Cole and her company, DMS Service, LLC ("DMS"), and that Glodek and Cole shared in the overpayment by AMI for these patches. (Counts Two, Five, Six, and Seven; Complaint, ¶¶ 30-31, 44, 55-57, 63-65, 71-72).

Plaintiffs' Complaint completely overreaches in its attempt to justify bringing this case in Florida.  Six of the seven counts of the Complaint are brought derivatively on behalf of AMI, a citizen of Delaware, against non-Florida individuals and non-Florida LLCs for acts occurring outside of Florida.  Only Count One, the fraudulent inducement count, has any connection to Florida and that is limited to the fact that plaintiff Richardson is a resident of Florida and that Glodek and Richardson met in Florida on three occasions prior to entering into the Agreement. Plaintiffs have sued one individual, Dorothy Glodek, a resident of Virginia who has no contacts in her individual capacity with Florida sufficient to subject her to personal jurisdiction in this Court.  Plaintiffs have sued another individual, Lynda Cole, a resident of California who has no personal connection to Florida and who is only alleged to have acted through her California

company, DMS.[1]  They have sued an entity, Lucketts Family, a Wyoming limited liability company that likewise has no connection to Florida and is simply alleged to be an assignee of Defendant Dorothy Glodek's stock in Plaintiff IntelHeart.[2]  They have asserted that venue is proper in Florida although virtually none of the alleged acts upon which the Complaint is based took place in Florida.  The bottom line is that the only relationship that this case has to Florida is that one plaintiff who is only a party to one count of the Complaint resides in Florida and that three meetings between Glodek and Richardson occurred in Florida prior to the signing of the Agreement.

In addition to these jurisdictional and venue defects, plaintiffs have brought two fraud claims, but completely ignored the requirement of Rule 9(b) of the Federal Rules of Civil Procedure that fraud be pleaded with particularity.  In addition, the claims with respect to the arrangement between AMI and DMS are not plausible under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) or *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), as the devices in question were in fact approved by the FDA and AMI did not overpay for them.[3]  Plaintiffs have also included a claim under the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") despite the fact that neither party to that count resides in Florida and the sole allegedly deceptive act, i.e. DMS's sale to AMI of non-FDA-approved Holter heart patches, has no connection whatsoever to Florida.

Finally, although plaintiffs purport to bring Counts Two through Seven derivatively on behalf of AMI and IntelHeart, they have failed to comply with Rule 23.1 of the Federal Rules of

---

[1] Although DMS is incorporated in Nevada, as an LLC it is a citizen of the state of its owner.

[2] Lucketts Family is deemed a citizen of Virginia as its owner is a citizen of Virginia.

[3] While the general rule is that a court does not consider extrinsic evidence when ruling on a motion to dismiss, it may do so "if [the extrinsic evidence] is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. V. Banc of Amer. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).  *See Daper v. Neutrogena Corp.*, 95 F.Supp. 3d 1366 n.1 (S.D. Flor. 2015).  As shall be shown in Section V of this Motion, both of these conditions exist in this case.

Civil Procedure.  This rule requires that a derivative complaint "must be verified" and must

"state with particularity" the efforts taken by plaintiffs to obtain the actions they seek from the

directors or shareholders of the company or the reasons for not making such an effort.  Plaintiffs

have not verified the Complaint and their efforts to explain why they did not make a demand of

the company prior to filing the Complaint do not provide the requisite degree of particularity

required by Rule 23.1.  In addition, although the Complaint purports to be brought on behalf of

IntelHeart, there are no claims asserted on its behalf and no claims made against it.  Therefore,

IntelHeart should be dismissed as both plaintiff and nominal defendant.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER GLODEK, COLE AND LUCKETTS FAMILY.

The sole basis for asserting personal jurisdiction over all of the defendants is the general

jurisdiction prong of Florida's long-ARM statute which requires that each of the defendants be

"engaged in substantial and not isolated activity within this state." Fla. Stat. § 48.193(2).  *See*

Complaint, ¶¶ 2, 7, 8, 11, 12.  "In order for a court to exercise general jurisdiction in Florida, the

contacts must be especially pervasive and substantial."  *Imaging Science Foundation, Inc. v.*

*Kane*, No. 09-81288, 2010 WL 2035323*3 (S.D.Fla. May 24, 2010).  *See General Cigar*

*Holdings, Inc. v. Altadis S.A.*, 205 F.Supp.2d 1335, 1343 (S.D.Fla. 2002).  The contacts of the

defendant with the forum state "must be so extensive to be tantamount to [a defendant] being

constructively present in the state to such a degree that it would be fundamentally fair to require

it to answer in [the forum state's courts] in any litigation arising out of any transaction or

occurrence taking place anywhere in the world."  *Baker v. Carnival Corp.*, No.06-21527, 2006

WL 3360418*2 (S.D.Fla. Nov. 20, 2006), *citing Purdue Research Foundation v. Sanofi*

*Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).  Glodek, Lucketts Family and Lynda Cole

are submitting declarations as part of this motion that plainly establish that none of them engages in the requisite degree of activity in Florida to establish personal jurisdiction.

### A. Dorothy Glodek

According to the Complaint, Dorothy Glodek is a citizen of the State of Maryland. (Complaint, ¶ 7).  This is incorrect.  As set forth in the attached Declaration of Dorothy Glodek (Exhibit 1 hereto), Glodek is a citizen of the Commonwealth of Virginia.  The Complaint also alleges that Glodek has "continuous and systematic business contacts in Florida."  This too is simply not true.  Glodek's only contacts with Florida as an individual involve travel to see her brother. While Glodek does have contact with Florida as the CEO of AMI in the performance of her corporate duties, these activities do not confer jurisdiction over her individually.  "[T]he corporate shield doctrine prevents the acts performed in the corporate capacity of a non-resident corporate employee to form the basis of jurisdiction over an employee in an individual capacity." *Imaging Science Foundation* at 2010 WL 2035323*5.  *See Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993).

### B. Lucketts Family

The Complaint alleges that Lucketts Family is a citizen of Maryland based upon the fact that "its only member, Ms. Glodek, is a Maryland citizen" and that it, acting through Glodek, "has continuous and systematic business contacts in Florida."  The Complaint also alleges that Glodek traveled to Florida to solicit the joint venture "on behalf of" Lucketts Family. (Complaint, ¶ 8).  These allegations are so wrong that it is difficult to know where to begin. First, as Glodek states in her Declaration, she is a citizen of the Commonwealth of Virginia, not the State of Maryland.  Second, Lucketts Family did not exist at the time of any of the first four meetings with Richardson that preceded the signing of the Agreement and therefore Glodek's

trips to Florida could not have been for the purpose of soliciting the joint venture on Lucketts Family's behalf.  In fact, Glodek only formed this company at the suggestion of Richardson who, ironically, explained that by adding this entity, Glodek would be protecting herself in the event that she was sued.  Third, Lucketts Family has absolutely no connection with Florida—no bank accounts, no business interests, no office.  As detailed in the Declaration of D Glodek Lucketts Family LLC (Exhibit 2), other than the ownership of Glodek's IntelHeart stock, the only other asset that Lucketts Family has is a bank account into which licensing fees received from AMI are deposited.  That account has no connection to Florida.  Therefore, Lucketts Family plainly has not engaged in "substantial activity" in Florida.

### C.    Lynda Cole

Lynda Cole is a citizen of California and the sole owner of DMS, also a citizen of California.  Cole is alleged to engage in continuous and systemic business in Florida. (Complaint, ¶¶ 11, 12).  However, as attested to by the Declaration of Lynda Cole, attached hereto as Exhibit 3, Cole does not engage in any business anywhere in her individual capacity. While she has traveled to Florida a number of times, she has done so solely in her capacity as the owner and manager of DMS for the benefit of DMS.  Under the corporate shield doctrine discussed previously, Cole's acts in her corporate capacity are not sufficient to subject her individually to the jurisdiction of the courts in Florida.

## III.    VENUE IS IMPROPER IN THE MIDDLE DISTRICT OF FLORIDA.

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a defendant to file a motion to dismiss a complaint for improper venue.  Once a defendant challenges venue, it is the plaintiff's burden to show that the venue chosen is proper.  *Hemispherx Bioapharma, Inc. v. Midsouth Capital, Inc.*, 669 F.Supp.2d, 1353, 1356 (*citing Delong Equip. Co. v. Washington*

*Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir.1988)); *Wai v. Rainbow Holdings*, 314

F.Supp.2d 1261, 1268 (S.D.Fla.2004).  While the plaintiff's allegations are to be taken as true, a

defendant may controvert those allegations with matters outside of the pleadings, including

affidavit testimony.  *Delong Equip. Co.*, 840 F.2d at 845; *Webster v. Royal Caribbean Cruises,

Ltd.*, 124 F.Supp.2d 1317, 1320 (S.D.Fla.2000); *Wai*, 314 F.Supp.2d at 1268.

In this case, plaintiffs rely on the transactional venue provision, 28 U.S.C. § 1391(b) (2),

which provides for venue in a "judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred."  (Complaint, ¶ 3).  In evaluating whether the acts

meet this standard, "[o]nly the events that directly give rise to a claim are relevant. And of the

places where the events have taken place, only those locations hosting a 'substantial part' of the

events are to be considered." *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1371 (11th Cir. 2003).

Notably, when a case involves multiple claims, a plaintiff must establish the propriety of venue

for each claim. *See Ford v. Supreme Court of Fla.*, No. 6:06–cv–3–Orl–31JGG, 2006 WL

1382075*5 (M.D. Fla. May 18, 2006); *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1029

(S.D. Fla. 1991); *Neizil v. Williams*, 543 F. Supp. 899, 904 (M.D. Fla. 1982).  Additionally, the

focus of the analysis is on the activities of the defendant which give rise to the claim, not those of

the plaintiff. *Jenkins Brick*, 321 F.3d at 1371–72.   It is important to note that contacts with a

state that might be sufficient to constitute minimum contacts for personal jurisdiction purposes

do not necessarily amount to a substantial part of the events giving rise to the claim.  *Id*. at 1372

("We think this case was incorrect because its flavor was that of a "minimum contacts" personal

jurisdiction analysis rather than a proper venue analysis.").

It is abundantly clear from the Complaint and the Declarations of Dorothy Glodek,

Lucketts Family, and Lynda Cole, that a substantial part of the activities of the defendants giving

rise to the claims did not occur in Florida.  Given that venue must be evaluated separately for each claim and each defendant, defendants set forth the facts with respect to each count and defendant.

### A.    Count One—Fraudulent Inducement Against Glodek

Count One alleges that Glodek made false representations to Richardson to induce him to enter into the Agreement.  The Complaint alleges that the initial meeting took place at Richardson's home in Florida with subsequent meetings occurring in Florida and North Carolina, and that the Agreement was signed on May 13, 2017 (Complaint, ¶¶ 18, 19, 21).  However, due to the deficiencies in the allegations of fraud it is impossible to determine from the Complaint where the alleged misrepresentations occurred.  In fact, plaintiffs do not even identify the misrepresentations.[4]

It is not the existence of a relationship of a defendant with a jurisdiction that establishes venue under the transactional prong of the venue statute.  It is the activities that give rise to the claim.  In a fraudulent inducement claim, the focus is therefore on the locale where the misrepresentations were made that induced the plaintiff to enter into the contract. In her Declaration, attached hereto as Exhibit 1, Glodek states that she first met with Richardson in Charlotte, North Carolina on December 16, 2016, not in Florida.  She also met with him in Charlotte on March 3, 2017 and conducted many discussions on the telephone.  Glodek did meet with Richardson on three occasions in Florida, during the first of which they made a brief stop at Richardson's home.  However, as Glodek states in her Declaration, almost all of the financial documents that AMI furnished to Richardson were provided electronically by Glodek while she was located in Maryland.  Moreover, Glodek did not sign the Agreement in Florida.  Thus, a

---

[4] In Section IV of this Motion, defendants note that these deficiencies are grounds for dismissal pursuant to Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity.

"substantial part of the events or omissions giving rise to the" fraudulent inducement claim did not occur in Florida.

B.   **Counts Two, Three and Four—Breach of Duty of Care, Breach of Duty of Loyalty and Breach of Duty to Inform Against Glodek and Lucketts Family**

1.   **Glodek**

These three counts accuse Glodek of breaching her duty of care by purchasing fraudulent heart devices from DMS (Count Two), breaching her duty of loyalty by misappropriating business assets of AMI for personal use (Count Three), and failing or refusing to provide Richardson with AMI's financial records (Count Four). No specifics are provided in the Complaint regarding the place where a substantial part of the events or omissions giving rise to these claims occurred.

As detailed in the Declaration of Dorothy Glodek, she is a resident of the Commonwealth of Virginia. She is the CEO of AMI which is a citizen of Delaware, but has its principal place of business in Maryland. AMI purchased the heart devices from DMS pursuant to quotes from DMS that were sent from Los Angeles, California to Sandy Spring, Maryland. Therefore, the purchases have absolutely no connection with Florida and cannot support venue in Florida. AMI's bank account is located in Maryland and it has no assets in Florida. Therefore, the alleged misappropriation of funds did not occur in Florida. Finally, the financial records of AMI are maintained in Maryland and the alleged failure to provide them to Richardson in Florida is not sufficient to support venue there.

2.   **Lucketts Family**

As detailed in the Declaration of D Glodek Lucketts Family LLC, Lucketts Family has no connection whatsoever with the State of Florida. It engages in no business and simply is the owner of record of Glodek's stock in IntelHeart and the recipient of some licensing fees from

AMI.  There is not a single act by Lucketts Family that occurred in or has any relevant connection to Florida.

### C.    Counts Five, Six and Seven—Fraud Against Cole and DMS, Conspiracy Against Glodek and Cole, FDUTPA Against DMS[5]

As noted previously, plaintiffs allege that Cole and DMS sold AMI fraudulent, non-FDA approved Holter heart patches.  These allegations lie at the heart of these three Counts.  Cole has stated in her Declaration that the sales by DMS to AMI had no connection with Florida.  These transactions occurred between California and Maryland.  There is not a single act relating to these transactions that bears any relationship to Florida, let alone a substantial part of the activities giving rise to the fraud, conspiracy or FDUTPA counts.  Venue in Florida is therefore improper.

## IV.    DISMISSAL, RATHER THAN TRANSFER, IS APPROPRIATE.

When a plaintiff files a case in a district where venue is improper, the resolution of the question of the proper venue is governed by 28 U.S.C. § 1406(a) which provides that the court "shall dismiss, or if be in the interest of justice, transfer such case to any district or division in which it could have been brought."  While this provision grants the court discretion, the use of the term "shall" means that dismissal is mandatory **unless** the interests of justice weigh in favor of transfer.  In assessing whether the interests of justice standard has been met, courts must consider whether the plaintiff's choice of venue has a good faith basis.  Although the general practice is to transfer a case to a forum where venue is proper, "district courts often dismiss a

---

[5] Plaintiffs' Complaint contains a number of errors that make it difficult to determine the specifics of certain allegations.  For example, the caption of Count Five indicates that it is a fraud claim against Cole and DMS.  The numbered paragraphs of this Count only include allegations against Cole and DMS.  However, in the "wherefore" clause at the end of the Count, AMI demands judgment against Glodek and Lucketts Family.  Defendants assume that Count Five is only directed against Cole and DMS.  Count Six's caption states that it is a conspiracy count against Cole and DMS.  However, the substance of the allegations involves Cole and Glodek and defendants will treat this Count as if it involves Cole and Glodek.  Count Seven's caption alleges a violation of FDUTPA against Cole and DMS, although the allegations and "wherefore" clause only name DMS.  Defendants assume that Count Seven is only directed against DMS.

case, rather than transfer it under Section 1406(a), if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and…similar conduct should be discouraged." 14D WRIGHT, MILLER & COOPER §3827 & n.37. *See Marks v. Otis Elevator Company*, No. 6:16-cv-01394, 2017 WL 2618848*6 (D. Kan. June 16, 2017); *Daros v. Tokoyo*, No. 05-CV-775, 2005 WL 1229734*3 (E.D.N.Y. May 23, 2005); *McEvily v. Granai*, No. 01 CIV 5430, 2001 WL 1098005*2 (S.D.N.Y. September 18, 2001) (dismissal granted where plaintiff identified no prejudice from dismissal and there was no apparent basis for choice of improper venue); *Bockman v. First American Marketing Corp.*, 459 Fed.Appx. 157, 160-162 (3d Cir. 2012) (plaintiffs failed to identify any injustice from dismissal); *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc.*, 445 F.Supp. 35, 49 (D.Del. 1977); *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 608 (7th Cir. 2003); *Rangel v. U.S.*, No. CV 10–00129, 2012 WL 1164080*1 (C.D.Cal. April 9, 2012) (straightforward facts did not support venue); *Nuckols v. Stevens*, No. 2:14 cv 705, 2014 WL 5197205 (M.D. Ala. Oct. 14, 2014).

For six of the seven counts of the Complaint, there is not a single fact that supports venue in Florida. These counts involve actions of individuals and companies in Maryland or California. Only the first count involves any activity in Florida and the relevant activity for venue purposes are the alleged misrepresentations regarding AMI's financials. As this information was provided by Glodek while she was in Maryland, the substantial activity related to the fraudulent inducement count did not occur in Florida. Plaintiffs' counsel could not have had a good faith basis for believing that venue was appropriate in Florida for any of the counts and therefore it is not in the interest of justice to transfer the case.

## V.  NEITHER OF THE COMPLAINT'S FRAUD COUNTS ALLEGE FRAUD WITH THE REQUISITE DEGREE OF PARTICULARITY REQUIRED BY RULE 9(B).

Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to allege the details of the fraudulent conduct.  Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  *See U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).  Neither of the two fraud counts of the Complaint in this case satisfies these requirements.

### A.  Count One—Fraudulent Inducement

Count One is directed at representations by Glodek to Richardson "regarding the financial health of AMI" prior to May 13, 2017.  (Complaint, ¶ 37).[6]  However, the following two statements are the sum and substance of these "representations":

- Glodek provided to Richardson "select AMI financials purporting to show AMI to be in sound financial condition" (Complaint, ¶ 20); and

- Richardson requested Glodek provide him with updated and more complete financials regarding AMI's performance, but Glodek ignored his requests (Complaint, ¶ 23).

Plaintiffs do not identify "precisely what statements were made," "the time and place of each statement," or "the content of such statements."  Thus, the allegations clearly do not comply with the requirement of Rule 9(b).

---

[6] Defendants note that paragraph 37 of the Complaint is not a sentence and, other than indicating that the representations were made by Glodek and occurred prior to the execution of the Agreement, contains no details regarding the representations.

**B.      Count Five—Fraud**

Count Five is a common law fraud claim premised on a single representation, i.e. DMS "would manufacture and sell to AMI Holter heart patches that were compliant with FDA regulations."  (Complaint, ¶ 56).  There is no other information provided about this representation—no dates when the representation was made and no details on the manner in which the representation was conveyed.  Thus, as in Count One, the allegations do not comply with the requirement of Rule 9(b).

The lack of particularity is especially troublesome because it is impossible to determine exactly what the plaintiff means when referring to "Holter heart patches."  DMS sells AMI two products—a monitor and an electrode.  It is unclear whether plaintiffs' use of the term "patches" is meant to refer to the monitor, the electrode, or the combination of the two.  The difficulty is compounded by the fact that the monitor sold by DMS is in fact FDA-approved and the electrodes sold by DMS to be used in conjunction with the monitor do not require FDA approval. This ambiguity in the allegations is precisely what the particularity requirement of Rule 9(b) is intended to prevent.

**VI.     PLAINTIFFS' CLAIMS REGARDING FRAUDULENT, NON-FDA APPROVED PATCHES ARE NOT PLAUSIBLE AS REQUIRED BY RULE 8(A)(2) AND SUPREME COURT PRECEDENT.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has explained that in order to comply with the Rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679.

While a court normally cannot consider evidence outside the four corners of the complaint when evaluating a motion to dismiss (Rule 12(d) of the Federal Rules of Civil Procedure), it may do so "if [the extrinsic evidence] is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."  *SFM Holdings, Ltd. V. Banc of Amer. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999).  If these conditions are met, the court is permitted to "incorporate the extrinsic documents' contents in determining whether Plaintiff has alleged sufficient facts to state a claim under which relief can be granted."  *Draper v. Neutrogena Corporation*, 95 F.Supp.3d 1366, 1376 n.1.  In *Draper*, the court utilized documents from the Federal Register as well as an FDA Guidance document and the labels of seventeen of defendant's products in ruling on the defendant's motion to dismiss.

In the Complaint, the claim that the heart patches that DMS sold to AMI were not approved by the FDA is central to several of the plaintiffs' claims.  The Complaint contains the following allegations about the heart patches:

- Glodek caused AMI to purchase "fraudulent, non-FDA approved Holter heart patches" from DMS and "then held such fraudulent patches for sale to the public" (Complaint, ¶ 30);

- Glodek caused AMI to overpay DMS for the fraudulent Holter heart patches and shared in the overpayment (Complaint, ¶ 31).

The purchase of the allegedly non-FDA approved Holter heart patches is then alleged to constitute a breach of the duty care in Count Two (Complaint, ¶¶ 43-44) as well as fraud in Count Five (Complaint, ¶¶ 56-58), conspiracy in Count Six (Complaint, ¶¶ 63-65), and a deceptive and unfair trade practice in Count Seven (Complaint, ¶¶ 71-72).  There can be no question but that two alleged facts are central to the plaintiffs' claims—that the heart patches were not FDA-approved and that AMI overpaid for the patches.

Given the critical role that these two allegations play in the plaintiffs' case, defendants submit as part of the Declaration of Lynda Cole extrinsic evidence that establishes without a doubt that plaintiffs' claims are not only implausible, but that they are based on objectively false allegations.  DMS sells myPatch®sl Holter monitors and electrodes to AMI.  As noted above, plaintiffs' reference to the products as "fraudulent, non-FDA-approved Holter heart patches" makes it difficult to ascertain whether the plaintiffs are referring to the monitor, the electrode, or the combination of the two.

The monitor sold by DMS is in fact FDA-approved.  DMS's 510(k) approval for the device is attached to the Declaration of Lynda Cole.  In addition, during the 510(k) process for the monitor, the FDA auditor reviewed all of the available electrode testing data as it is felt to be an integral part of the product.  However, the electrodes sold by DMS to be used in conjunction with the monitor do not require FDA approval.  Attached to the Cole Declaration is the FDA's Guidance for Industry and Food and Drug Administration Staff/Class II Special Controls Guidance Document:  Electrocardiograph Electrodes ("FDA Guidance").[7]  In order to be compliant with the rules and regulations of the FDA, all that is required with respect to the

---

[7] This guidance is similar in nature to the extrinsic evidence considered by the court in *Draper*.

electrodes is that they meet the requirements of the FDA Guidance.  The electrodes sold by DMS to AMI comply with the FDA Guidance.  This compliance is evidenced by the testing results conducted by the manufacturer and reviewed by the FDA.  These results are attached to the Cole Declaration as well.

Therefore, the extrinsic evidence submitted as part of this Motion to Dismiss establishes that the plaintiffs' allegations regarding fraudulent non-FDA approved Holter heart patches are not plausible and therefore Counts Two, Five, Six, and Seven of the Complaint must be dismissed.

The allegations regarding the price paid by AMI for the devices also are contradicted by extrinsic evidence that establishes that AMI does not overpay DMS for either the monitor or the electrodes.  Attached to the Cole Declaration are invoices sent by DMS to AMI.  Also attached are copies of DMS's price list for these items for 2017 and 2018.  As these documents show, DMS actually sells the monitors and electrodes to AMI at a discount to the list price.  Therefore, there is no "overpayment" for AMI and DMS to split.  Plaintiffs' claim to the contrary is not plausible.

## VII.   THE FDUTPA COUNT IS FLAWED AS NEITHER AMI NOR DMS ARE FLORIDA RESIDENTS AND THE ACTS UPON WHICH THE COUNT IS BASED DID NOT OCCUR IN FLORIDA.

In Count Seven, plaintiff AMI attempts to bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against DMS despite the fact that AMI is a resident of the State of Delaware, DMS is a resident of the State of California, and the sales in question did not occur in Florida.  Not surprisingly, the law does not allow it to do so.  In fact, the attempt to do so is frivolous, without legal or factual merit, and for the purpose of harassment.  As a result,

DMS includes in its motion a request that the Court order Richardson to post a bond pursuant to Fla. Stat. §501.211(3) which provides that:

> In any action brought under this section, upon motion of the party against whom such action is filed alleging that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may, after hearing evidence as to the necessity therefor, require the party instituting the action to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees.

Florida courts have issued a number of rulings in cases under FDUTPA that make it abundantly clear that either the consumer bringing the case or the acts underlying the cause of action must reside in or occur in Florida.  The case of *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090 (Fla. 4th DCA2003) discusses a number of these cases.  The plaintiffs in *Hutson* sued the manufacturer of calcium supplements for deceptive trade practices based upon the advertising and labeling of the supplements.  Plaintiffs sought certification of a nationwide class.  In assessing whether common questions of law predominate for purposes of certifying a class that included non-Florida residents, the court confronted the issue of whether FDUTPA applies to non-Florida residents.  The court found that

> [t]he claims asserted in the national class action occurred both in the state of Florida and in 49 other states.  The alleged wrong was committed, and the damage done, at the site of the sale of appellees' products; that is, in the various states where members of the purported class made their purchases.  We hold that the trial court correctly concluded that common issues of law do not predominate because **the claims of non-resident consumers would require the application of consumer protection laws from each of the states where the deceptive trade practices occurred and the non-resident claimants suffered injury.**

*Id.* at 1094 (emphasis added).  *See also Stone v. CompuServe Interactive Services, Inc.*, 804 So.2d 383 (Fla. 4th DCA 2001) (contracts were completed where purchasers bought computers and law of those states applied, not FDUTPA); *Renaissance Cruises, Inc. v. Glassman*, 738

So.2d 436 (Fla. 4th DCA 1999) (sufficient contacts with Florida to apply FDUTPA where marketing information originated in Florida and tickets contained a forum selection clause).

There is absolutely nothing in the Complaint to justify the application of FDUPTA to DMS.  DMS is a California LLC that sold product to AMI, a Delaware citizen with its principal place of business in Maryland.  Plaintiffs' inclusion of the FDUPTA claim is so baseless that it not only must be dismissed, but the court must hold a hearing pursuant to Fla. Stat. §501.211(3) regarding the necessity of requiring Richardson to post a bond to indemnify defendants Cole and DMS for attorneys' fees incurred defending such a frivolous claim.

## VIII.   THE COMPLAINT DOES NOT COMPLY WITH RULE 23.1.

The Complaint purports to include six counts that are brought derivatively on behalf of AMI.  In fact, AMI is the sole plaintiff named in Counts Two through Seven.  However, AMI has failed to comply with two essential requirements of Rule 23.1 of the Federal Rules of Civil Procedure.

### A.      The Lack of a Verified Complaint

Rule 23.1 is quite explicit that a derivative complaint "must be verified."  Moreover, this requirement has been preserved for derivative actions even though it has been abolished for pleadings in general.  Lack of verification merits dismissal under Rule 41(b) for failure to comply with the Rules.  *Glenbrook Capital Ltd. Partnership v. Kuo*, 525 F.Supp.2d 1130 (N.D.Cal. 2007).  The verification provides assurance to the court and the parties that the plaintiff or its agent has investigated the allegations and stands behind the merits of the complaint.  *Rogosin v. Steadman*, 65 F.R.D. 365, 367 (S.D.N.Y. 1974).

In light of the extrinsic evidence submitted in conjunction with this motion, it would be well-nigh impossible for plaintiff to verify the allegations in the complaint that the monitor or

patches were non-FDA approved or that AMI overpaid for them.  Although defendants have not

submitted extrinsic evidence with respect to the claim about misappropriating assets or failing to

provide financial records, plaintiffs would be hard-pressed to verify these facts as well.  In any

event, the lack of verification mandates dismissal of the Complaint.

> **B.**    **Failure to Make Demand**

Plaintiffs have similarly failed to comply with the demand requirement of Rule 23.1.

Rule 23.1 requires derivative plaintiffs to satisfy more stringent pleading requirements than the

notice pleading of Rules 8 and 12(b)(6).  It provides in part:

> The [derivative] complaint must be verified and must state **with particularity** any
> effort by the plaintiff to obtain the desired action from the directors or comparable
> authority and, if necessary, from the shareholders or members; and the reasons for
> not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3)(emphasis added).

The Complaint's attempt to comply with the demand requirement of Rule 23.1 is

woefully inadequate.  Plaintiffs IntelHeart and AMI simply allege that they have not made a

demand "because the remaining 50% of voting shares in IntelHeart, and thus AMI, are held by

Ms. Glodek who is incapable of exercising independent judgment as to whether to pursue the

claims alleged herein because the claims involve her wrongful conduct."  (Complaint, ¶ 35).

In evaluating the sufficiency of this allegation under the particularity requirement of Rule

23.1, Delaware law governs as both IntelHeart and AMI are Delaware corporations.  *Stepak v.

Addison*, 20 F.3d 398, 402 (11th Cir. 1994).  Under Delaware law, demand is excused if plaintiff

presents "particularized facts" that management is "incapable of making an impartial decision

regarding such litigation."  *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).  It is not enough

to simply plead that a director or shareholder participated in the challenged transaction or that he

or she would be reluctant to sue himself or herself.  *See Story v. Kang*, No. 8:04CV1587T-23TBM, 2006 WL 163078*2 (M.D. Fla. January 20, 2006).

Plaintiffs' failure to make a demand on the defendants is particularly egregious in this case.  Had they done so, defendants would have been able to produce the evidence that they have submitted as part of this motion to prove that the monitor was FDA-approved and that the electrodes complied with FDA Guidance.  Glodek would have been able to provide the evidence that she did not misappropriate assets and would have been able to provide the financial data that Richardson alleges he asked for but did not receive.  The Rule exists in order to afford shareholders and their corporations the "opportunity to address the shareholder's concerns without litigation and to decide what corporate action, if any, is in the best interests of the corporation and *all* of its shareholders."  *Stepak v. Addison*, 20 F.3d 398, 402 (11th Cir. 1994).  Plaintiffs cannot be excused from their responsibility to the company merely because they believe that the other shareholder engaged in wrongdoing.  Therefore, the derivative claims must be dismissed so that the parties are given the opportunity envisioned by Rule 23.1 to resolve the matter short of litigation and thereby preserve the assets of the corporation.

     **C.**     **No Claims are Asserted on Behalf of or Against IntelHeart.**

While Counts Two through Seven purport to be brought on behalf of AMI, no claim has been asserted on behalf of IntelHeart.  Nor are any claims made against IntelHeart.  Therefore, there is no basis for IntelHeart to be a party to this lawsuit.

20

Respectfully submitted,

FORD**HARRISON**LLP

 /s/ Amy R. Turci
Edward B. Carlstedt
Florida Bar No. 136972
ecarlstedt@fordharrison.com
101 E. Kennedy Boulevard, Suite 900
Tampa, Florida 33602
T (813) 261-7800 | F (813) 261-7899

Amy R. Turci
Florida Bar No. 0349630
aturci@fordharrison.com
225 Water Street, Suite 710
Jacksonville, FL  32202
T (904) 357-2000 | F (904) 357-2001

Larry S. Gondelman
Pro Hac Vice Motion Pending
larry.gondelman@powerslaw.com
1501 M Street, NW, Suite 700
Washington, DC  20005
T (202) 872-6723| F (2029 785-1756

James T. Jackson
Pro Hac Vice Motion Pending
jjackson@mrjclaw.com
1551 N. Tustin Ave., Suite 1020
Santa Ana, CA 92705
T (714) 972-2333 | F (714) 972-2296

Attorneys for Defendants

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 12, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send a copy to:

Christopher J. Greene
Purcell, Flanagan, Hay & Greene, P.A.
1548 Lancaster Terrace
Jacksonville, Florida 32202
T (904) 355-0355 | F (904) 355-0820
Litigation@pfhglaw.com
service@pfhglaw.com

/s/ Amy R. Turci
Attorney